THE CITY OF CINCINNATI EX REL. WILLIAM M. AMPT v. THE CITY OF CINCINNATI ET AL.

POWERS OF THE BOARD OF ADMINISTRATORS OF CINCINNATI.

Under the law of 1892 [89 O. L. 299], the Board of Administrators of Cincinnati, has the power to appoint expert engineers to investigate the condition of the water supply, the sufficiency of the present water works, and to submit plans for new water works.

APPEAL from the Court of Common Pleas of Hamilton County.
SWING, J.

This was an action brought in the name of the city of Cincinnati on the relation of William M. Ampt, a taxpayer, against the city of Cincinnati and others, the city solicitor of said city having declined to bring the suit, to have declared void the appointment of John W. Hill, Samuel Whinery and George H. Benzenberg, who had heretofore been appointed

Cincinnati ex rel. William M. Ampt v. Cincinnati et al.

by the board of administration of said city as engineers in connection with the water works of said city. And also to enjoin said board of administration and the auditor and treasurer of said city from paying the salaries and expenses of said engineers.

On the 21st day of December, 1895, the board of administration of said city, passed the following preamble and resolution:

"Whereas, Various medical and other organizations, as well as men scienced in public hygiene, have repeatedly called the attention of the board of administration to the unsatisfactory sanitary condition of our present public water supply; and,

"Whereas, It is the desire of this board to remedy this condition by means which shall be practical and effective, and which may tend to raise the standard of our public health with reference to water-borne diseases, as high as that of any other city in the world; and,

"Whereas, In order that this condition may be remedied, and that the water works of this city may be properly managed, conducted and controlled in a safe, economical and efficient manner, and the citizens of this city may be furnished a sufficient and reliable supply of water, it will be necessary in the near future to enlarge and extend the present works; and,

"Whereas, the principal features necessary for the enlargement and extension of the present works will be the construction of a system for the purification of the water to be furnished, and the introduction of modern, improved pumping machinery; and,

"Whereas, It is the opinion of this board that the main pumping station cannot be continued in its present location much longer without an ever increasing risk of failure to maintain a sufficient and reliable supply of water for the city, as it grows in population from year to year; and,

"Whereas, In the opinion of this board, the present location is too limited in space to admit of the introduction of modern, economic pumping machinery, or for the addition of a plant for the proper purification of water before it is delivered to the mains; and,

"Whereas, During the past thirty years, numerous investigations and reports on this subject have been made by the engineers, trustees and water commissioners appointed by acts of the legislature, water trustees, council and other authorized authorities; and,

"Whereas, A careful review of the history of the various attempts and failures to carry out such a project during that time, to enlarge and extend the present pumping station, and to remove same to a more suitable location, thus securing more liberal space for the erection and operation of pumping machinery and other adjuncts of modern works of public water supply, cannot fail to impress any one with the immediate necessity for the same; and,

"Whereas, Such necessity for the enlargement and extension of the present works has never been successfully denied, but owing to the cost entailed thereby has been evaded by the substitution of something less than the better judgment of the various commissions, committees and engineers deemed essential; and,

"Whereas, One of the most potent and plausible objections made in the past against the enlargement and extension of the present works has been the imperfect plans upon which these efforts have been based, thereby furnishing a basis for the claim that a large amount of money was to be ex-

pended in an enterprise at once indistinct as to plan, and uncertain as to cost; and,

"Whereas, In order that this objection may be removed, it is the opinion of this board that the enlargements and extension of the present works should be considered from the starting point, from carefully prepared plans and estimates made by experienced and skillful engineers in this class of work, covering the manner, method and time, as well as the cost thereof; and that if the plans proposed will produce the results anticipated at such cost as will commend them to the people, the construction should be proceeded with as vigorously as possible; and,

"Whereas, It may at first be regarded as inexpedient in the light of past experience in the same direction, to engage in any further investigations with reference to plans and estimates of cost for the enlargement and extension of the present works, yet considering the constant rapid advance of information upon sources of water supply, methods for the purification of polluted waters in large volumes, and the enlarged demands for water which will be made by the people as the city grows in territory and population under the operation of the annexation law, and especially in view of the material changes in the cost of all items of water works construction during the interval which has elapsed since the last report on this subject was submitted, it is deemed and declared advisable and necessary for the proper management and conduct of the water department, that the question involved be submitted to competent engineers in order that the subect of the enlargement and extension of the present works may be reviewed in all its repects; therefore be it

"Resolved, That competent engineers be appointed by this board to investigate and report upon the subject of enlarging and extending the present water works of the city; such engineers to proceed with such investigation having in view an enlarged capacity of works, combined with a quality of water which will satisfy the requirements of the most advanced hygienic regulations for potable water, said plans to be developed upon lines which will conform to the modern requirements for economic and convenient operation durability, and practical utility as a whole, as well as in detail, and to be submitted with full details as to manner, method of construction, time to be occupied in such construction, as well as its costs, and the capacity and quality of water to be furnished, and cost of operating after construction; and be it further

"Resolved, That said engineers be directed to investigate and report upon sources of supply other than the Ohio river, which may, in their opinion be capable of meeting the requirements of the city in quantity and quality, and which may be regarded as practical sources for the present and future needs of the city, and worthy of consideration by this board; and be it further

"Resolved, That John W. Hill, of Cincinnati, Ohio, Samuel Whinery, of Cincinnati, Ohio and George H. Benzenberg, of Milwaukee, Wisconsin, be, and they are hereby appointed as such engineers, and that they be directed to submit the results of their investigations and their report in full for the consideration of this board, not later than March 20, 1896; and be it further

"Resolved, That the expenses of such investigation and report be and the same are hereby declared to be necessary for the proper management, conduct and control of the water department in a safe, economical and efficient manner in the future."

Cincinnati ex rel. William M. Ampt v. Cincinnati et al.

And afterwards, said board, acting in accordance with the same, employed said John W. Hill, Samuel Whinery, and George H. Benzenberg as expert engineers, to make the investigations and report to said board their conclusions as therein indicated. This employment and action by the board is claimed to be without authority of law. All the sections of the statutes which apply to the management and control of the water works by said board, and which bear on the scope of their powers, must be considered in determining the question here presented.

Section 2211 of the Revised Statutes provides that "the board may employ such superintendents, engineers, clerks, laborers and other persons as it may deem necessary in the execution of its duties, and fix their salaries and compensation; but the salaries of such superintendents, clerks and engineers as are appointed for a definite time, shall be fixed within limits prescribed by the common council; and any of such persons may be removed by the board at any time."

Section 2212 provides "The board shall have all the powers which, in other cities, are vested in the trustees of the water works, the board of improvements, the commissioners of sewers, the park commissioners," etc.

Section 2409 provides, "The trustees shall receive a fixed salary to be determined by the council, and the trustees of the board shall manage, conduct and control the works, furnish the supplies of water, collect water rents, and appoint all necessary officers and agents and fix the term of office, and the amount of salary of each officer and agent as appointed."

Section 2410 provides, "The trustees shall be authorized to make such by-laws and regulations, as they may deem necessary for the safe, economical and efficient management and protection of the water works."

Section 2411 provides, "For the purpose of paying the expenses of conducting and managing the water works, the trustees or board shall have power to assess and collect from time to time, a water rent of sufficient amount, in such manner as they may deem most equitable upon all tenements and premises supplied with water."

Section 2412 provides, "If there is any surplus after paying the expenses of conducting and managing the water works, and the repair of the same, such surplus may be applied to the enlargement or extension of the works or of the reservoirs, the payment of the interest of any loan made for their construction, or for the creation of a sinking fund for the liquidation of the debt."

Section 2415 provides, "The trustees or board shall be authorized to make contracts for the building of machinery, water works, buildings, reservoirs, and the enlargement and repair thereof, and the manufacture and laying down of pipe, and the furnishing and supplying with connections all necessary fire hydrants for fire department purposes, and keeping the same in repair, and for all other necessary purposes to the full and efficient management and construcion of water works."

Section 2435 provides, "Except as otherwise provided in this title, the board of public works in cities of the first grade of the first class, shall not hereafter be permitted to create any debt for the prosecution of work upon the water works beyond the yearly net income of the water works, nor make any contract in any year that cannot be met and paid from the income of the water works for the year; and all debts created in violation of these provisions shall be absolutely void."

Section 2229 provides, "The revenue of the water works shall be expended by the board, and contracts for water works purposes shall be made by it only, and from said revenues, the board shall pay the interest on any bonds heretofore or hereafter issued by the city for water works purposes, after the expenditure of the amount raised by the current levy of taxes to pay interest upon such bonds."

Section 2229a provides, "That in any city of the first grade of the first class, should it be deemed necessary for the board of public works of said city to provide new pumping engines for water works purposes, and the requisite amount of money to pay for the same shall not be in the proper funds applicable to such uses, the said board may nevertheless contract for the building and furnishing of such necessary engines at a cost not exceeding one hundred and fifty thousand dollars, provided, however that the costs of the same shall be fully paid within said limits out of the ordinary revenue of said water works arising from the future earnings thereof."

Section 2229b provides, "That in any city of the first grade of the first class, should it be deemed necessary by the board of public affairs of said city to provide new pumping engines for water works purposes, and the requisite amount of money to pay for the same shall not be in the proper funds applicable to such uses, the said board may nevertheless contract for the building and furnishing of the necessary engines at a cost not exceeding one hundred and sixty thousand dollars; provided, however, that the cost of the same shall be fully paid within said limits out of the ordinary revenue of said water works arising from the future earnings thereof."

And in connection with all of these provisions must be considered what is commonly called "The Worthington Law," namely, section 2699, which provides, "In cities of the first grade of the first class no ordinance or other order for the expenditure of money shall be passed by the city council, or a board, officer or commissioner having control over the moneys of the city, without stating specifically in such ordinance or order, the items of expense to be met under it; and no such ordinance or order shall take effect until the auditor of the city shall certify to the city council that there is money in the treasury specially set apart to meet such expenditure; and all expenditures greater than the amount specified in such ordinance or order. shall be absolutely void, and no party whatever shall have any claim or demand against the city therefor."

These sections clearly apply to the general control, management and development of the water works when established. If new water works are to be established for the city of Cincinnati, then the law of 1892 (89 O. L., p. 299) must be considered, for it clearly contemplates new works, and a possible expenditure of six millions of dollars for their construction. This law is too lengthy to be here set out in full, but the first provision of the law is as follows:

"That whenever in any city of the first grade of the first class, the board having charge of the water works of such city, shall by a resolution passed by a majority of the members thereof, declare the necessity of a large and material improvement in the water works of such city, and that it is expedient to provide additional improvements and equipments for such water works, there shall be a board of trustees, to be known as the commissioners of the water works, composed of four citi-

CIRCUIT COURTS. 377

Cincinnati ex rel. William M. Ampt v. Cincinnati et. al.

zens thereon, not more than two of whom shall belong to the same political party, to be appointed by the mayor of such city; upon the passage of such resolution it shall be certified by said board to the mayor, and it shall be his duty thereafter to make such appointments.''

These provisions of the statute set forth the general powers of the board as to the management of the existing water works, and their power as to new ones when satisfied as to their necessity.

Before considering these provisions of the statute, it might be well to consider the relation that the water works bears to the city and its people, its nature, its scope and its interests, and the probable way in which it can be managed for the protection and the best interests of the people, for it must be first borne in mind that the water works are not to be run in the interests of those who manage and control it, but for the interests of the people who have created it, and whose interest require continuance. A pure and abundant supply of water is now and has always been the greatest and most difficult problem confronting municipalities. No large city can exist or ever has existed without extensive provisions as to water. Ancient cities probably devoted relatively more attention to it than modern cities, although its present use and consumption is proportionately greater, and modern medical science has demonstrated the greater necessity for pure and uncontaminated water, in order to preserve the health of the community. Considering this, the court must take judicial notice of the city of Cincinnati, its water works and its past history. The reservoir's supply has always been, and it is now quite limited, so that at no time can there be a large reserve supply of water; thus, it is necessary that the pumps should constantly be at work to keep up the limited reserve. In the next place, it is located on a river which has a greater range of rise and fall than any river in the world, at times so great as to endanger the successful working of the pumping engines. Again, every gallon of water used has to be pumped to a great heighth, and the most powerful engines are required. Now, when it is considered how absolutely essential water is to the health of every inhabitant of the city, and therefore to the life of the city itself, it must be apparent to every one, that the management of the water works calls for the most able, careful and far-seeing supervision; and in the event of any accident or emergency, those in control must have power to act at once, and to any extent required, to preserve and maintain the works in working condition. Therefore, we could hardly expect that the Worthington law, which prohibits the expenditure of money which is not in the treasury, to apply in its entirety to the water works. If it did, and the pumping engine should become disabled, or destroyed, by any accident, and there was no money in the treasury to meet such an emergency (and it is not likely that there would be) the city would be in a helpless condition possibly for months. Therefore, we find, that after the flood of 1884, when the water works was seriously confronted with disaster, the legislature passed section 2229a above referred to, by which the board was authorized to enter into a contract for pumping engines in excess of the amount in the treasury to the extent of one hundred and fifty thousand dollars ($150,000); and again, this was afterwards increased by section 2229b to the extent of one hundred and sixty thousand dollars ($160,000).

Section 2229, above referred to, provides that the board shall expend the revenues, and make all contracts, and pay interest on the bonds,

and section 2435 clearly authorizes the board to make contracts for work upon the water works to the extent of the yearly income of the water works, whether the money is in the treasury or not; and section 2409 says "the board shall manage, conduct and control the water works, and appoint all necessary officers and agents."

These provisions clearly show that the legislature intended to invest in the board full power to manage and control the water works, to the end that their efficiency may be maintained untrammeled as is the case in other branches of city government.

In the action of the board in the present instance, has the board gone outside of its powers?

We think not; the action being one in which the public is deeply interested, the board, in the foregoing preamble and resolutions, saw fit to make their action a public record, and to set forth at great length, the necessity for their action, and what it was proposed should be done by the engineers. In brief, it might be stated, that the board having learned from medical and other sources, that the present supply of water is impure and unwholesome, and knowing, from their own knowledge, that the present capacity of the water works is inadequate to the present and future needs of the rapidly growing city, and not being themselves expert water works engineers, they have employed these expert engineers, and instructed them to go over the whole problem of supplying Cincinnati with a pure and abundant supply of water, in order that the board can act intelligently in trying to remedy the present defects. If such investigation should show that there is no better location for water works than the present one, and the engineers can point out how they can be improved, and such improvements can be made at an expense not to exceed the income from the water works, then it would seem that a wise and far-seeing management would make the improvement in this way, without saddling on the taxpayers an additional burden. If, on the other hand, the expert engineers should conclude that the present works never can be made to supply the need of the city for a pure and adequate water supply, and can point out where and how it can be done, then the board could intelligently act, if they saw fit, under the act of 1892, *supra*, and send such a communication. to the mayor, declaring the necessity for new works —and their duty. would then be fully and intelligently discharged.

We think their action is clearly within the purview of the law, and in our judgment it was a wise, necessary and proper thing to do.

*Wm. M. Ampt*, for Plaintiff.

*Fred Hertenstein, Corporation Counsel*, for Defendants.